The Town of Freedom v. Norris.

---

No. 15,032.

THE TOWN OF FREEDOM v. NORRIS.

| 128 | 377 |
|-----|-----|
| 140 | 219 |
| 143 | 57 |

| 128 | 377 |
|-----|-----|
| 144 | 454 |
| 144 | 607 |
| 146 | 561 |
| 146 | 575 |
| 147 | 420 |

EASEMENT.—*Implied Dedication.*—The implied dedication by the owner of land platted for a town site of a strip of land fronting a river, to the public as a common, for the purpose of a landing, and for access to the river, does not vest in the town, or in the public, the fee of the land, but the fee remains in the grantor, subject to the easement.

SAME.—*Alluvial Accretions.*—Such easement attaches to alluvial additions caused by changes in the course of the river, and the public has the right to pass over such additions for the purpose intended by the dedication.

SAME.—*Abandonment of Landing.—Non-User of Easement.*—A non-user of the easement, for the purpose intended, for a period of thirty years, due to an abandonment of commerce upon the stream, will be taken as an abandonment of the easement.

SPECIAL FINDING.—*Judgment.—Intendment.*—To warrant a judgment in favor of a party, on a special finding, the finding must contain all the facts necessary to the judgment, and nothing is to be taken by intendment.

From the Owen Circuit Court.

*I. H. Fowler* and *W. A. Pickens*, for appellant.

*D. E. Beem* and *W. Hickam*, for appellee.

COFFEY, C. J.—This was an action by the appellant against the appellee, in the Owen Circuit Court, to recover

the possession and to quiet the title to the land described in the complaint.

The complaint consists of two paragraphs. The first alleges that the appellant is the owner in fee simple and entitled to the possession of the land, and that the appellee unlawfully keeps it out of possession.

The second paragraph alleges that the appellant is the owner in fee simple of the land, and that the appellee is asserting an unfounded title thereto, which casts a cloud upon the title of the appellant.

The cause was tried by the court, which, at the request of the appellant, made a special finding of the facts proven, and stated its conclusions of law thereon.

The appellant excepted to the conclusions of law, and assigns as error that the circuit court erred in such conclusions.

The material facts in the case, as disclosed by the special finding, are, that on the 18th day of November, 1834, John R. Freeland, then the owner in fee simple of the west fractional northwest quarter of section twenty-one (21), in township nine (9) north, of range four (4) west, comprising all of said northwest quarter west of White river, caused to be surveyed and platted what has since been known as the town of Freedom. The plat was never acknowledged, and was not recorded until the 10th day of August, 1841. As shown by the plat, Randolph street, Wall street, Spring street, Market street, Hill street, Limestone street and Franklin street run east and west, and Water street runs north and south, the latter being on the extreme eastern boundary of the town, and is sixty feet in width. At the time the plat was prepared there was a strip of land eighty feet wide between Water street and White river, extending from Franklin street south to a point midway between Spring and Market streets. This strip was impliedly dedicated by Freeland to the public as a common for the purpose of making, loading and landing flat boats then used to carry freight on

the river, and for access to the river. The dedication was accepted by the public and the citizens of the town, and used by them for the purposes for which it was dedicated until about the year 1852. Between the years 1834 and 1852 the river washed away the land so dedicated to such an extent that the west bank of the river ran near the east edge of Water street, and by reason thereof said strip was not, and, indeed, could not be used by the public for the purposes intended by the dedication. About the year 1862 the business of flat-boating on White river was entirely abandoned at the point in controversy, and has never since been resumed. After the change in the stream, and the abandonment of the dedicated land for the purposes above stated, the river again, by gradual process, changed its course at this point, and for more than thirty years prior to the time this cause was tried the eighty-foot strip above described, and all its accretions, have been claimed and occupied by the appellee and his grantors, who have kept the same in cultivation as farm lands, so far as they were capable of cultivation, and have paid the taxes on the same. About the year 1857 the land dedicated being partially washed away at some points, and wholly in the river at other points, the same fell into disuse by the public and by the town of Freedom as a boat-yard or landing, and has not since that date been used for public purposes.

At the time Freeland platted the town of Freedom he retained a strip one hundred feet wide on the north side of the town, and a like strip on the south side, neither of which was included in the platted territory nor in the dedication.

The accretions caused by the gradual change in the river attaching to the strip dedicated by Freeland, and to the land retained by him, not dedicated or included in the platted territory, now amount to about twenty-five acres.

The appellee makes title to the land by a regular chain of conveyances from Freeland to himself. Neither the town of Freedom nor the public has at any time within thirty

years prior to the trial of this cause had possession of, or used, or occupied, any of said land, except that portions of the strip dedicated, and which had been used for the purpose of access to a church, and to reach a public highway; but it has not been used for any of the purposes intended by the dedication, or for which it was accepted by the public.

The town of Freedom was incorporated in June, 1888. The town, as incorporated, includes the land in controversy. Under these facts the court found, as matter of law, that the appellant was entitled to the land dedicated, and no more.

The appellant claims the land in controversy under the implied dedication made by Freeland in 1834, while the appellee claims under regular conveyances executed by Freeland, and those claiming under such conveyances.

The dedication mentioned in the special finding did not vest in the town of Freedom, nor in the public, the fee to the eighty-foot strip of land, over which the public was given the right to pass, but left the fee in Freeland, subject to a mere easement. Freeland, or his grantees, at any time since the dedication could have maintained ejectment against any one taking unlawful possession of the strip. *Terre Haute, etc., R. R. Co.* v. *Rodel*, 89 Ind. 128. It is plain, therefore, under the repeated holdings of this court, that the appellant could not recover under the first paragraph of its complaint, as it declares upon a fee simple title. *Stout* v. *McPheeters*, 84 Ind. 585; *Stehman* v. *Crull*, 26 Ind. 436; *Rowe* v. *Beckett*, 30 Ind. 154; *Groves* v. *Marks*, 32 Ind. 319; *Hunt* v. *Campbell*, 83 Ind. 48.

Assuming, without deciding, that the appellant, under the second paragraph of the complaint, was entitled to the relief sought, we proceed to an examination of the title of the respective parties to the suit.

It may be remarked at the outset that it is well settled at common law that one owning land in fee, bounded by a stream of water, is the owner of all the accessions to such land caused by a gradual change in the channel of such

stream. When such land is subject to an easement, the question as to whether such accretion becomes a part of the easement depends, of necessity, upon the nature of the easement, the intention, express or implied, of the party granting, or dedicating, the same, and the intention of those accepting and acting upon such grant, or dedication. If one owning land bounded by a stream should dedicate a public highway running parallel with the stream, and extending to the water's edge, and accretions should take place beyond the highway not necessary to its use, it could not be contended with reason, that such addition to the land belonged to the public, or was subject to the easement granted.

But if one owning the fee should dedicate a public highway running to a public ferry, or to a public dock or boat-landing, and accretions should take place after the dedication, over which it was necessary to pass in order to reach the ferry or dock, then such accretions would become subject to the easement so dedicated, otherwise the object of the donor would be defeated and the public would suffer. The law as applicable to the latter class of cases is fully discussed and illustrated in the well-considered cases of *Saulet* v. *Shepherd*, 4 Wallace, 502; *Gravier* v. *City of New Orleans*, 1 Condensed Rep. 551; *Municipality No. 2* v. *Orleans Cotton Press*, 18 La. 123; *Cook* v. *City of Burlington*, 30 Iowa, 94; and *Mayor, etc.*, v. *United States*, 10 Peters, 660.

In the latter case cited it was said by the court: "The question is well settled at common law, that the person whose land is bounded by a stream of water, which changes its course gradually by alluvial formations, shall still hold the same boundary, including the accumulated soil. No other rule can be applied on just principles. Every proprietor whose land is thus bounded, is subject to loss, by the same means which may add to his territory; and as he is without remedy for his loss, in this way, he can not be held accountable for his gain. This rule is no less just, when applied to public, than to private rights."

It is not strictly correct, however, to say that such alluvial formation attaches to the easement, for that is a mere incorporeal hereditament, but it attaches to the land covered by the easement, and the right of the public to use the accretion to the same extent as the land over which it was granted, at once attached to the addition.

In our opinion the easement dedicated by Freeland in this case was of such a nature that it attached itself to the alluvial formations added to the eighty-foot strip of land described in the special finding, and conferred upon the public the right to pass over such formations for the purposes intended by the dedication. Had there been a continuous use of the easement created by Freeland's dedication, the case would be free from difficulty ; but, as we have seen, the easement had not been used for a period of more than thirty years before the commencement of this suit, and the chief object sought by Freeland, namely, the promotion of commerce on White river, had ceased to exist.

It is contended by the appellee that under these circumstances we must presume an abandonment of the easement created by the implied dedication made by Freeland in the year 1834.

Whatever may be the rule as to an easement created by express grant, much authority is to be found holding that public easements created by an implied dedication may be abandoned by the public. It seems to be settled that a town or city may not abandon its public streets and alleys, and that the statute of limitations does not apply to one who wrongfully obstructs the same, and this, principally upon the ground that such obstruction is a public nuisance, indictable, and is a continuing offence. *Pettis* v. *Johnson*, 56 Ind. 139 ; *Sims* v. *City of Frankfort*, 79 Ind. 446. But that this rule does not apply to easements other than streets and alleys, and such as are not necessary to the public convenience, seems to be settled. Washburn Easements and Servitudes, pp. 242 and 243 ; *City of Pella* v. *Scholte*, 24 Iowa,

283; *Callaway Co.* v. *Nolley*, 31 Mo. 393; *Baldwin* v. *City of Buffalo*, 29 Barb. 396; *Commissioners, etc.*, v. *Taylor*, 2 Bay, 282; *Collett* v. *Board, etc.*, 119 Ind. 27; *Fox* v. *Hart*, 11 Ohio, 414; *Rowan* v. *Town of Portland*, 8 B. Mon. 242; *Knight* v. *Heaton*, 22 Vt. 480.

In *City of Pella* v. *Scholte, supra*, the title to a public square was involved, and in discussing the questions arising on the statute of limitations, Dillon, C. J., who delivered the opinion of the court, said: "Rights of this character may be acquired by the public by the requisite user, and it would seem reasonable that the public, with a knowledge of its rights and of the adverse claim by an individual, may lose those rights in a similar manner."

The maxim "once a highway always a highway," does not exist except where it involves the rites of abutters or those occupying a similar position.

In Elliott Roads and Streets, p. 658, it is said: "But, where no such rights are involved, the public may either abandon or vacate a highway, and, where such rights do exist, they may also be abandoned by those entitled to assert them. * * * It is proper, therefore, to state that the highway may cease to exist either by abandonment or vacation according to law."

In this case the easement in question was dedicated for the purpose of facilitating commerce on White river by means of transporting freight on flat boats. In carrying on such business it was necessary that the public should have access to the river in order to build and load boats, and to deliver and receive such articles as had been or were to be shipped. Commerce on the river was entirely abandoned more than thirty years before the commencement of this suit, and with such abandonment the public ceased to use the easement in controversy.

We are of the opinion that when commerce on White river ceased the easement in question ceased also to ex-

ist. If one owning the fee should dedicate a right to pass over his land to reach a particular church or other public place, if the church or other place should be destroyed or abandoned, the right of the public to continue the use of the way for purposes other than those for which it was intended could not be maintained. So, in this case, as the easement was given for the purpose of carrying on commerce on White river, we think the right to use it ceased with the cessation of commerce on that stream, and that it must be held that the non-user for the period of thirty years, when taken in connection with the other facts in the case, amounts to an abandonment of the rights created by the implied dedication by Freeland to pass over his land.

We think the judgment should be affirmed on still another ground.

It is not shown by the special finding of facts that the alluvial additions constituting the twenty-five acres of land in controversy extend east of the land dedicated by Freeland. For anything that appears it may belong to the land retained by Freeland not included in the dedication. If we should reverse the cause, with instructions to the circuit court to re-state its conclusions of law and render a decree for the appellant, to what land should the decree apply? Certainly not to the alluvial attached to the land reserved by Freeland.

The burden was upon the appellant to show what alluvial, if any, was attached to the land covered by the easement, and as the court does not find that any addition has been made to this particular land by accretions, we must presume that there was none. *Vinton* v. *Baldwin*, 95 Ind. 433; *Citizens Bank* v. *Bolen*, 121 Ind. 301.

To warrant a judgment in favor of a party on a special finding the finding must contain all the facts necessary to the judgment, and nothing is to be taken by intendment. *Vinton* v. *Baldwin*, *supra*; *Buchanan* v. *Milligan*, 108 Ind.

433; *Waymire* v. *Lank*, 121 Ind. 1; *Kehr* v. *Hall*, 117 Ind. 405.

In our opinion the court did not err in its conclusions of law on the facts found.

Judgment affirmed.

Filed May 26, 1891.