GUARDIAN LIFE INSURANCE COMPANY OF AMERICA
*v.* BRACKETT.

[No. 16,063.   Filed May 10, 1940.   Rehearing denied
June 19, 1940.   Transfer denied October 28, 1940.] ·

444

Denny, Adams, Baker & Orbison, Lewis B. Ewbank and Sam Dowden, all of Indianapolis; and Parr & Parr, of Lebanon, for appellant.

Stark & Manifold, of Indianapolis; and Adney & Adney, of Lebanon, for appellee.

DeVoss, C. J.—Appellee filed his amended complaint against appellant on a life insurance policy, seeking to recover benefits by reason of an alleged sunstroke which caused permanent total disability, and demanding the reinstatement of said policy which had been surrendered.

The amended complaint is in three paragraphs, each paragraph alleging in substance that on the 30th day of March, 1918, he purchased a life insurance policy in the sum of $5,000.00 from appellant; that one of the provisions of said policy was that in the event of the total and incurable disability of appellee from injury or sickness before arriving at the age of sixty years, said appellant would pay him 10 per cent of the principal of said policy each year so long as plaintiff should be permanently disabled by reason of such injury or sickness. The complaint further alleges that on the 15th day of July, 1931, while the policy was in full force and effect and before appellee arrived at the age of sixty years, he became totally and incurably disabled as the result of a sunstroke, and that he has so remained ever since. That thereafter, while said policy was in full force and effect, appellee went to the office of the appellant in the City of Indianapolis, and made proof

that he was totally and incurably disabled; that at that time he informed Mr. Rainey, appellant's agent, that by reason of his sickness and inability to work he must borrow money on his policy. That said agent, well knowing that appellee was totally disabled, failed to notify said appellee of the disability benefit clause or of its requirements as to written proof, but loaned appellee money on his policy, well knowing that he (appellee) was entitled to disability benefits when such loan was made; that up until recently he did not know, because of his mental condition, of his rights to compensation under the policy, and that such condition was caused by said sunstroke; that said agent thereafter notified appellee to surrender his policy for failure to pay premiums when due.

That said policy provided that during the time disability continued premium payments thereon were waived by said appellant; that in March or April, 1932, appellant notified him to surrender said policy for failure to pay premiums when due, and that appellee, in ignorance of his rights, on demand of appellant, made an affidavit that said policy was lost. That as soon as appellee was mentally able to understand the requirements of his policy he requested blanks on which to make written proof of his disability, which blanks were refused to him by appellant. A copy of said policy is attached to said complaint.

Appellee prays that said policy be declared in full force and effect, that said policy be delivered up by appellant to appellee, and that appellee recover disability benefits under said policy, together with costs.

To this complaint appellant filed an answer in two paragraphs, the first paragraph being in general denial and the second paragraph alleging that said policy was issued as charged by appellee and that thereafter appel-

lee borrowed on said policy the sum of $1,445.30, and that after said loan had been made appellee surrendered said policy upon payment to him by appellant of the full cash surrender value thereof; and that all liability under said policy terminated upon the payment of such cash surrender value.

To this second paragraph of answer of appellant, appellee filed his reply in two paragraphs, the first paragraph being in general denial, and the second paragraph alleging that he may have accepted the cash surrender value as alleged but that he has no remembrance or knowledge thereof, and that if said sum was paid to him he was of unsound mind, which was well known to appellant, and that he (appellee) disaffirmed the acceptance of said sum and the surrender and cancellation of his policy by letter.

The cause was submitted to the court for trial and at the proper time defendant filed a request for special findings of fact and conclusions of law by the court, and the court did so make and file its special findings of fact and stated its conclusions of law adversely to appellant, to each of which conclusions of law the appellant, at the proper time, excepted. Motion for a new trial was filed by appellant, which was overruled by the trial court, and judgment was rendered for appellee as follows:

"It is, therefore, hereby CONSIDERED, ORDERED, ADJUDGED AND DECREED that the policy sued upon in plaintiff's complaint is hereby ordered and is reinstated as of the 7th day of April, 1932, and that all premiums on said policy accruing on and after the 29th day of September, 1931, are ordered and are waived and shall continue to be waived during the continued total and permanent disability of the plaintiff. That the plaintiff shall recover of the defendant benefits accruing on and before the 30th day of March, 1935, with interest

thereon to February 19, 1936, in the total sum of $1,219.87, and said benefit payments shall continue so long as plaintiff shall continue totally and permanently disabled; that the defendant has a lien on the policy so reinstated in the sum of $1,445.30, with interest thereon at 6% after February 19, 1936. That the policy sued on in plaintiff's complaint or a duplicate thereof shall be delivered to the plaintiff; that the plaintiff shall recover his costs assessed at $————."

Appellant assigns as error that the trial court erred in each of its conclusions of law (1 to 11 inclusive) and in overruling appellant's motion for a new trial. The causes assigned in the motion for a new trial are: (1) the decision of the court is not sustained by sufficient evidence; (2) the decision of the court is contrary to law; (3) the assessment of the amount of recovery is too large.

It is maintained by appellant in its brief that the case turns on whether appellant did receive "due proof" as provided in § 24 of the policy involved herein.

In considering the exceptions to the conclusions of law we keep in mind the fact that by such exceptions appellant admits for the purpose of exceptions only, that the facts are fully and correctly found, upon which the conclusions of law are based.

In determining whether the special findings support the conclusions of law upon which the judgment is based, we cannot dissect the findings into fragmentary parts, but they must be considered as a whole, and all intendments and presumptions are taken in favor of the findings, rather than against it. *American Income Ins. Co.* v. *Kindlesparker* (1936), 102 Ind. App. 445, 450, 200 N. E. 432; *Mount* v. *Board, etc.* (1907), 168 Ind. 661, 80 N. E. 629, 14 L. R. A. (N. S.) 483; *National Surety Co.* v. *State* (1914), 181

Ind; 54, 103 N. E. 105; *Harris* v. *Riggs* (1916), 63 Ind. App. 201, 112 N. E. 36.

That part of the policy relative to total and permanent disability and due proof thereof, and under which appellee claims liability to exist, reads as follows:

"24. TOTAL AND PERMANENT DISABILITY BENEFITS. Whenever the Company shall receive due proof during the continuance of this policy and before default in payment of premium that the insured has become wholly and incurably disabled by bodily injury or disease, not due to any cause or condition existing at the time of delivery hereof, so that he is and will be presumably thereby permanently and continuously prevented from engaging in any occupation whatsoever for remuneration or profit and that such disability has existed continuously for not less than sixty days prior to furnishing such proof—the permanent loss of the sight of both eyes, the loss of both feet above the ankles, the loss of both hands above the wrists, or a similar loss of one hand and one foot, to be regarded as constituting total and permanent disability without prejudice to other causes of disability—then the Company will grant disability benefits as follows:

"(A) IF THE DISABILITY OCCURRED BEFORE THE INSURED ATTAINED AGE 60:

"1. WAIVER OF PREMIUMS. Commencing with the policy year next following the receipt of such proof the Company will at the beginning of each policy year waive payment of premium for such year during such disability, and the provisions and benefits of the policy shall be continued in force, except as hereinafter provided, as if such premiums were being paid in cash.

"2. DISABILITY ANNUITY. Six months after the receipt of such proof, if the disability then exists, the Company will begin to pay to the Insured (with the written consent of the assignee, if any) a disability annuity of one-tenth of the face amount of this policy, and will make such

annuity payments annually on the anniversary of the first payment during such disability prior to maturity of the policy. Premiums waived and annuity payments made hereunder will not be an indebtedness on the policy and will not be deducted from any payment or payments to be made when the policy becomes a claim by death or matures as an endowment or in any settlement under the policy.

"The Company will admit the age of the Insured when furnished with satisfactory evidence of the date of birth and reserves the right to require such proof of date of birth at the time proof of disability is furnished."

The court found that the policy in question was sold to appellee on March 30, 1918; that on July 15, 1931, appellee suffered a sunstroke and from and after and on account of said sunstroke appellee was and continued to be unable to do any work for profit or to conduct any business for compensation, and that by reason of said sunstroke he was mentally incapable of doing any work or business which he might undertake. That he was, after said sunstroke, mentally unable to exercise ordinary business judgment and that such mental disability began with said sunstroke and as the direct result thereof and continued to the day of trial of this cause. That said total and permanent disability was incurable and was such as plaintiff (appellee) was insured against in said policy sued on; that at the time plaintiff (appellee) was so totally and permanently disabled by said sunstroke, the policy and every part thereof was in full force and effect, all premiums required under said policy having been paid; that on one or more occasions on or before September 29, 1931, while said policy was in full force and effect, plaintiff (appellee) told defendant Insurance Company (appellant), through its district manager, that he had suffered a sunstroke, had been sick and that he wanted to cash this policy; that said

district manager induced plaintiff (appellee) to take a maximum loan instead; that said district manager arranged all details for such loan, and for changing the beneficiary of said policy from appellee's deceased first wife to his estate so as to avoid calling plaintiff's (appellee's) present wife on the matter, delivered the check to plaintiff (appellee) and then handled the details whereby plaintiff (appellee) made his present wife the beneficiary. That appellee and his then present wife lived in Indianapolis at an address known to said district manager, who had notice of said sunstroke; that his said wife had no knowledge of the existence of said policy, and did not know thereof until some years later. That at the time the loan was made and when the cash, surrender value was received by plaintiff (appellee) in April, 1932, he was by reason of said sunstroke totally and permanently disabled and of unsound mind, incapable of understanding or remembering the terms of his policy or rights thereunder and incapable of transacting any business with defendant (appellant) in regard to such policy; that in August, 1933, under the directions of Fred Dickerman, who sold him the policy originally, plaintiff (appellee) made a written demand on the defendant (appellant) for blanks on which to submit proof of his total permanent disability and informing defendant (appellant) of the sunstroke, which demand defendant (appellant) refused, pointing out that the policy had been cancelled; that on July 15, 1931, while the policy was in full force, before he had reached the age of 60 years, as the direct and immediate result of said sunstroke he became totally and permanently and incurably disabled and that such condition continued for more than 60 days prior to the time plaintiff (appellee) informed defendant (appellant) of said sunstroke, and continued for more than

two years before plaintiff (appellee) wrote defendant (appellant) for blanks on which to make proof of his condition; that from and after said sunstroke down to the present time, and during all of said time down to the present time, appellee has been and is permanently and totally disabled and of unsound mind, incapable of understanding his rights and incapable of giving defendant (appellant) any other notice of his physical condition than what he did give, by reason of his said condition and that said mental and physical condition of plaintiff (appellee) was not caused by any condition existing at the time he took delivery of said policy but was due to said sunstroke.

As conclusions of law on the above findings, the court stated that the law is with plaintiff (appellee); that the policy sued on was in full force and effect when plaintiff suffered the sunstroke July 15, 1931; that he became totally and incurably disabled and would presumably continue so and did so continue to the present time; that the policy was in full force and effect in April, 1932, when plaintiff received the cash surrender value thereof; that defendant Insurance Company received notice of plaintiff's sunstroke on or before September 29, 1931, sufficient to place on the defendant the duty to inquire and investigate such disability and furnish plaintiff with forms for further proof if it so desired, and had defendant made such investigation it would have found that plaintiff was totally, permanently and incurably disabled and mentally incapable of making further proof. That plaintiff gave defendant such "due proof" under § 24, § 24 (A) 1 and § 24 (A) 2 of the policy as he was capable of giving and he was excused from making any further due proof; that the surrender of the policy by plaintiff was voidable and he had elected to avoid the surrender thereof, and said

policy should be reinstated and full relief granted; that said policy is in full force and plaintiff is entitled to full benefits thereunder; that plaintiff is entitled to have said policy of insurance reinstated in all its provisions, to have premiums waived on and subsequent to March 30, 1932, and to receive disability benefits thereunder on and subsequent to March 30, 1932; and is entitled to recover from defendant the sum of $500.00 which should have been paid on March 30, 1933, with 6 per cent interest to February 19, 1936, in the total sum of $586.50; and the further sum of $500.00 which was payable on March 30, 1934, together with interest at 6 per cent in the sum of $556.50; and the further sum of $526.50 payable on March 30, 1935. That plaintiff is entitled to recover from defendant the total sum of $1,669.50; that defendant on the 29th day of September, 1931, loaned plaintiff the sum of $1,445.30, which is unpaid; that the same bears interest at the rate of 6 per cent and that defendant paid to plaintiff on the 7th day of April, 1932, the sum of $91.37 as a pretended surrender value of said policy; that said sum of $91.37 and the interest on said loan amounts to the sum of $449.63, which should be deducted from said sum of $1,669.50 found due plaintiff, leaving as a net balance due plaintiff on the 19th day of February, 1936, the sum of $1,219.87; and that the loan heretofore made on the 29th day of September, 1931, in the sum of $1,445.30 is a valid lien on said policy.

The time of the beginning of liability under the policy is fixed by the policy and is predicated upon the provision that, "Six months after the receipt of such proof, if the disability then exists, the company will begin to pay to the insured a disability annuity of one-tenth of the face amount of this policy." It is apparent that no liability for payment

could exist under the policy until such due proof has been received by the company, or until such proof was waived, or until such a set of circumstances became existent as would avoid or obviate the necessity of such "due proof."

There is no specific time fixed in the policy for making such due proof, but such due proof, or waiver or condition in avoidance, is a condition precedent to any liability under the policy, and must be had during the continuance of the policy and before default in payment of premiums.

Appellant contends that the unsoundness of appellee's mind as found by the court to exist is not a sufficient excuse for failure to make "due proof" or cause it to be made as provided in the policy.

The question of whether or not insanity is a sufficient cause for failure to give notice of loss under an insurance policy or make due proof thereof has been considered by the courts of other jurisdictions and there is much conflict of authority relative thereto.

Without an attempt to discuss or reconcile the diverse authorities we are inclined to and do follow the reasoning set out in the case of *Comstock* v. *Fraternal Accident Assn.* (1903), 116 Wis. 382, 93 N. W. 22, which has been quoted and affirmed by numerous courts.

The policy in the instant case contained a provision fixing the time of payment for disability at a time subsequent to receipt of "due proof" and fixing the time of making "due proof" at and during the continuance of the policy and before default in payment of premium. This provision was a mandatory one and required some act to be done as a condition precedent to the right to recover for total disability, and should be read with an exception saving the rights of the assured from forfeiture for failure

to comply therewith where he is totally incapacitated from acting in the matter and the contract of insurance was entered into in contemplation thereof, and that exception became a part of the policy the same as if embodied therein in exact language.

Forfeitures of insurance policies are not favored by the courts in Indiana, and such policies should be construed so as to effect indemnification to the insured rather than to defeat it.

The court found that on the 15th day of July, 1931, the appellee suffered a sunstroke and as a result thereof was totally disabled and would continue so to be and was of unsound mind and incapable of transacting any business thereafter. On said 15th day of July, 1931, the liability under the policy providing against total disability accrued, total disability having started while the policy was in force and before default in premium payments, and there remained only the making of due proof to effectuate the payment of the loss. To hold that the total disability against which the insurance was procured should, by rendering the insured incapable of giving "due proof," be the means of defeating the very object of the insurance, would, it seems to us, be inconsistent.

In the case of *Johnson* v. *Mutual Life Ins. Co.* (1934), 70 F. (2d) 41, 44, the court stated:

"An overwhelming majority of state courts that have passed upon the matter have, however, laid down the rule that a condition precedent requiring notice or proof of disability is excused where its performance is impossible by reason of the physical or mental incapacity of the insured, as where the insured is insane or unconscious during the period when proof should have been furnished, and that the condition may be performed within a reasonable time after the incapacity is removed. . . . We

think the rule announced by the majority of the state courts is the sound rule to apply. . . ."

The above case was cited and the same conclusion on the question was reached in the recent case of *Schlintz* v. *Equitable Life Assur. Soc. of U. S.* (1937), 226 Wis. 255, 276 N. W. 336.

In the case of *Provident Life Ins. etc. Co.* v. *Baum* (1867), 29 Ind. 236, the court held that ignorance of a provision of the policy on the part of the plaintiff excused a delay in giving notice of the death of insured, when plaintiff did not have access to the policy, and that the provision as to such notice must receive a reasonable construction, and such holding has been followed and affirmed by our courts.

In the case of *Metropolitan Life Ins. Co.* v. *People's Trust Co.* (1912), 177 Ind. 578, 98 N. E. 513, the court stated that when a life insurance policy contained no provision as to the time of presenting proof of death and the beneficiaries had no knowledge of the existence of the policy, a delay of two years and two months after death in making proof was not unreasonable.

In the present case the court found, and there was evidence to sustain it, that in August, 1933, appellee, under the guidance of Fred Dickerman, made a written demand on appellant for blanks on which to submit proof of his total disability, which demand was refused, appellant pointing out that the policy had been canceled.

This was in effect a denial of liability by appellant, and if such demand was made in proper time and such refusal received to such demand, then appellee would be relieved of making further proof of loss, and under the facts as found by the court, we hold that such demand was timely made. *Provident Life and Acc. Ins. Co.* v. *Fodder* (1935), 99 Ind. App. 556, 193 N. E. 698.

Appellee further contends that due proof as provided in the policy was timely made by informing Mr. Rainey, agent of appellant, of appellee's disability on or before September 29, 1931.

The court found, and such finding is sustained by the evidence, that on or before September 29, 1931, less than three months after appellee's total permanent disability occurred, he told the district manager of appellant, Mr. Rainey, that he had suffered a sunstroke, had been sick and that he wanted to cash this policy, and upon this finding the court stated as a conclusion of law that appellant received notice of appellee's sunstroke, sufficient to place on appellant the duty to inquire and investigate his disability, and that such notice was all he was capable of giving by reason of his mental condition.

Appellant asserts that the finding does not warrant the conclusion that appellant received notice of such disability as would satisfy the requirements of the policy relative to due proof, and by the motion for a new trial contends that the finding is not sustained by sufficient evidence.

The evidence discloses without controversy that the policy in suit was purchased by appellee on March 30, 1918, and that on July 15, 1931, some thirteen years after such purchase, he suffered a sunstroke and by reason thereof became and continued to be of unsound mind and became and continued to be totally and permanently disabled, and .that on the date of such sunstroke the policy was in full force and effect.

An examination of the policy discloses the following endorsement thereon: "Notice: To collect the amount payable under this policy it is not necessary to employ any person, firm or corporation." This endorsement was, no doubt, for the purpose of assuring the policy-

holder his interests would be cared for by the insurer, and that he need not expend money for counsel relative thereto. The policyholder had a right to rely upon the endorsement, and, no doubt, did so rely thereon when he purchased the policy, and under the facts found by the court that appellee informed the district agent of appellant, while said policy was in full force, that he had suffered a sunstroke, had been sick and wanted to cash his policy, that, under the circumstances, was a sufficient notice to place on appellant the duty to investigate the same, and in the fulfillment of the obligations created by the policy and the endorsement it was duty bound to investigate further, and had such further investigation been made, full information would have been received relative to total disability, and appellant is held to have received such due proof as it would have discovered had it made such investigation. *Prudential Ins. Co.* v. *Martin* (1936), 101 Ind. App. 320, 196 N. E. 125; *Peele* v. *Provident Fund Society* (1897), 147 Ind. 543, 44 N. E. 661; *Sovereign Camp, etc.* v. *Latham* (1915), 59 Ind. App. 290, 107 N. E. 749.

Appellant complains that the court failed to find that appellee elected to rescind the surrender of his policy and ever repaid or offered to repay the surrender value received by him, and that the conclusion of law that he is entitled to reinstatement of his policy is not sustained by any finding.

The complaint alleged and the court found that in August, 1933, under the guidance of Fred Dickerman, he (appellee) made a written demand on appellant for blanks on which to submit proof of his disability, and that said demand was refused, pointing out that the policy had been canceled. This we think was a sufficient finding of a disaffirmance of the surrender of the policy, and sustains the conclusion that the policy should be

reinstated. It is true that there is no finding that the cash surrender value was ever repaid or proffered to appellant, but the finding of the court that the total disability occurred on July 15, 1931, and that appellee gave such proof as he was able to give was a finding that his interest vested on that day and that thereafter appellant had in its possession disability benefits which were payable to appellee, and such amount was in excess of the cash surrender value of the policy received by him and should have been applied by appellant as a repayment of the cash surrender value, upon the disaffirmance of the surrender by appellee. *Pfeiffer* v. *Missouri State Life Ins. Co.* (1927), 174 Ark. 783, 297 S. W. 847.

Appellant further contends that there is no finding of any particular sum of money constituting the loan or the cash surrender value which was paid to appellee, and that therefore the conclusions of law relative thereto fixing the amounts thereof and interest thereon are not based upon any finding of the court.

The court, however, did find that the policy in suit was sold by appellant to appellee and that said policy and every part thereof was in full force and effect when the disability occurred; that a maximum loan was made thereon on a particular date and the cash surrender value paid on a particular date. This was a sufficient finding as a basis for computation, and the court properly concluded by his computation what the cash surrender value was and what the maximum loan value was. We think the finding of the court was sufficiently comprehensive, and that the court could by calculation reach the results as stated in the conclusions of law.

In ascertaining the meaning of the finding it must

be read as a whole, and if, when so read, it can be said to sustain the conclusions of law stated thereon, no error can be predicated on the exception to the conclusion.

In the case of *Biddle* v. *Pierce* (1895), 13 Ind. App. 239, 247, 41 N. E. 475, the court said:

> "If it (the finding) gave the basis of the same in such a manner that by a mere calculation the amount could be readily found, we think it was sufficient. This is what was done by the court. The judgment following the conclusions specifically set forth the several amounts coming to the respective parties as ascertained from the findings and conclusions of law."

See also *Judah* v. *F. H. Cheyne Electric Co.* (1913), 53 Ind. App. 476, 101 N. E. 1039; *Kedey* v. *Petty, Gdn.* (1899), 153 Ind. 179, 54 N. E. 798; *National Surety Co.* v. *State* (1914), 181 Ind. 54, 103 N. E. 105.

It is further contended by appellant that there is no finding that would warrant appellee's recovering $500.00 as of the respective dates of March 30th in each of the years 1933, 1934, and 1935, with interest on each from said date to February 19, 1936.

The complaint filed prayed that the policy be declared in full force and effect, and alleged that appellant was indebted to appellee for disability benefits as per policy contract beginning on the 15th day of July, 1931, and continuing down to the (then) present time, and demanded all proper relief.

As stated heretofore, there was a sufficient finding of ultimate facts to warrant the court in reaching the ultimate conclusion of amounts due in the future, and we see no reason why the court, after finding the vested right of appellee, could not make the calculations as to future payments, even though the same were not specifically demanded in the complaint. The complaint

will be deemed on appeal to have been amended to cover the facts contemplated in the special findings. *General Motors Truck Co.* v. *Perry* (1934), 99 Ind. App. 357, 192 N. E. 720.

Some reference is made by appellant to the capacity of appellee to rescind, and as to what the complaint did not state. No question was raised upon the issues joined as to his status or lack of capacity to sue or to disaffirm. Consequently, error was thereby waived as to the sufficiency of the complaint and subsequent proceedings, relative to his capacity. *Hedekin Land, etc., Co.* v. *Campbell* (1916), 184 Ind. 643, 112 N. E. 97, and cases cited.

Appellant further objects to conclusion of law No. 10 and to that portion thereof wherein the court concluded "that the defendant on the 29th day of September, 1931, loaned to plaintiff herein the sum of $1,445.30, which loan has not been paid, that said loan bears interest at the rate of *Six* (our italics) per cent per annum. . . . That the interest on said loan and said sum of $91.37 surrender value of said policy on the 19th day of February, 1936, amounts to the aggregate sum of $449.63, which should be deducted from said sum of $1,669.50 found due plaintiff, leaving a net balance due this plaintiff on the 19th day of February, 1936, the sum of $1,219.87."

It is contended by appellant that the rate of interest on said loan mentioned in the conclusion should be 5 per cent instead of 6 per cent, and that therefore the calculated net sum due plaintiff is erroneous. Appellant is correct in this contention. The court also found that on the 15th day of July, 1931, when the disability occurred, that the policy and every part thereof was in full force and effect. It therefore follows that the provision in the policy relative to interest payable on loans

made was in full force and effect. Paragraph 4 under "Benefits and Provisions" provides among other things that interest on loans will be at the rate of 5 per cent per annum.

Calculating the amount due, under the finding that the policy was in full force, at the rate of interest named therein, the following result is reached.

The interest on said loan from date thereof to February 19, 1936, plus said surrender value paid of $91.37, amounts to an aggregate sum of $408.53, which sum deducted from the amount found due appellee, towit $1,669.50, leaves a net balance due appellee on the 19th day of February, 1936, in the sum of $1,260.97.

We have read the evidence presented in the record and are of the opinion that the proper result has been reached herein except as herein above stated, which is a matter of calculation, and we find no reversible error, and are of the opinion that justice does not require a new trial herein. It is within the power of this court under the circumstances to order an increase of the judgment so as to conform to the evidence and finding.

It is therefore ordered that the trial court modify its conclusion of law No. 10 by substituting 5 per cent for 6 per cent as the rate of interest on the loan made, and that the judgment be modified by adding to the amount found due in the aggregate ($1,219.87) the sum of $41.10, thereby establishing the total sum recovered at $1,260.97, and that the judgment be further modified by fixing the rate of interest on the lien for the loan at 5 per cent after February 19, 1936, all as of the date of original judgment, and that the judgment when so modified be affirmed.

NOTE.—Reported in 27 N. E. (2d) 103.